After Recording Return To:
**Wealthbridge Mortgage Corp.**



Clackamas County Official Records
Sherry Hall, County Clerk
**2008-066465**

**$91.00**

01250397200800664650130130

M-TD          Cnt=1   Stn=6  KARLYNWUN
$65.00 $16.00 $10.00

09/24/2008 02:15:07 PM

---

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

MIN: 100192000000567483                                              PDX014653

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated **September 19, 2008**                , together with all Riders to this document.

**(B)** **"Borrower"** is **Andrew Neilson**

Borrower is the trustor under this Security Instrument.

**(C)** **"Lender"** is **Wealthbridge Mortgage Corp.**
Lender is a **An Oregon Corporation**                                 organized and existing under the laws of **Oregon**                                 . Lender's address is
**15455 NW Greenbrier Parkway  Suite 111, Beaverton, OR  97006**

**(D)** **"Trustee"** is **Chicago Title Insurance Company, 10135 SE Sunnyside Road, Ste 200 Clackamas Oregon 97015**

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated **September 19, 2008**                . The Note states that Borrower owes Lender **Four Hundred Twelve Thousand Five Hundred and no/100**
Dollars (U.S. **$412,500.00**                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 01, 2038**

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3038 1/01

MERS
ITEM 2702L1 (0609)

GreatDocs™
(Page 1 of 12)

EXHIBIT_____1_____
PAGE_____1_____

(G)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "**Escrow Items**" means those items that are described in Section 3.

(N)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MERS
ITEM 2702L2 (0609)

2

EXHIBIT 1
PAGE 2

Form 3038 1/01
GreatDocs™
(Page 2 of 12)

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                                **County**                                  of
                                                                                                                    [Type of Recording Jurisdiction]

[Name of Recording Jurisdiction]
**SEE LEGAL DESCRIPTION ATTACHED.**

which currently has the address of                    **12010 Southeast Winston Road**
                                                                                [Street]

**Damascus**                    , Oregon              **97089**                    ("Property Address"):
[City]                                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MERS
ITEM 2702L3 (0609)

Form 3038 1/01
GreatDocs™
(Page 3 of 12)

3        EXHIBIT____1____
              PAGE____3____

partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MERS
ITEM 2702L4 (0609)

Form 3038 1/01
GreatDocs™
(Page 4 of 12)

EXHIBIT ____1____
PAGE____4____

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MERS
ITEM 2702L5 (0609)

5

Form 3038 1/01

GreatDocs™
(Page 5 of 12)

EXHIBIT    1
PAGE    5

period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3038 1/01
MERS
ITEM 2702L6 (0609)                                                                               GreatDocs™
                                                                                                (Page 6 of 12)

EXHIBIT_____1_____
PAGE_____6_____

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)   Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)   Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.   Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MERS
ITEM 2702L7 (0609)

**EXHIBIT** _____1_____
**PAGE** _____7_____

Form 3038 1/01
GreatDocs™
(Page 7 of 12)



applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                            Form 3038 1/01
MERS
ITEM 2702L8 (0609)                                                                                        GreatDocs™
                                                                                                         (Page 8 of 12)



EXHIBIT___1___
PAGE_____8_____

limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property

**OREGON**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
MERS
ITEM 2702L9 (0609)

Form 3038 1/01
GreatDocs™
(Page 9 of 12)

*9*    EXHIBIT ___1___
       PAGE ___9___

and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. .

**21.  Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22.  Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18

10        EXHIBIT___1___
          PAGE_____10___

unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23.  Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24.  Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25.  Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26.  Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27.  Required Evidence of Property Insurance.**

**WARNING**

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MERS
ITEM 2702L11 (0609)

EXHIBIT ___I___
PAGE ___11___

Form 3038 1/01
GreatDocs™
(Page 11 of 12)

11

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)     _____ (Seal)
**Andrew Neilson**                    -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                                      -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                                      -Borrower                                         -Borrower

Witness:                                      Witness:

_____              _____


State of **Oregon**
County of **Clackamas**

This instrument was acknowledged before me on  9/19/08                          (date) by
**Andrew Neilson**

                                                              (person[s] acknowledging).

                                              _M. Ellis_____
                                                              Notary Public for Oregon

OFFICIAL SEAL
**M ELLIS**
NOTARY PUBLIC-OREGON
COMMISSION NO. A389989
MY COMMISSION EXPIRES FEBRUARY 24, 2009

                                              My commission expires:  2/24/09


**OREGON**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**               Form 3038 1/01
MERS                                                                                  GreatDocs™
ITEM 2702L12 (0609)                                                                   (Page 12 of 12)

                                              12

                                              EXHIBIT____1____
                                              PAGE____12____

Order No.: 459730

## LEGAL DESCRIPTION

Part of the Southwest quarter of Section 32, Township 1 South, Range 3 East, of the Willamette Meridian, in the County of Clackamas and State of Oregon, described as follows:

The South 6.00 acres (the North and South boundary line of said 6.00 acres being parallel with the South line of the following described tract of land), of which the said 6.00 acres is a part, to wit:

Beginning at a point in the center of the County Road at the Northwest corner of the East half of the West half of the Southwest quarter of Section 32, Township 1 South, Range 3 East, of the Willamette Meridian; running thence South following county road, 93.00 rods to an angle in said road; thence about 63.00 rods in a Southeasterly direction following said road to James Stradley's land (being land formerly owned by John H. Johnson); thence North 100.00 rods to E. Ball's land; thence 60.00 rods to the place of beginning.

Excepting the East 724 feet of South 6.00 acres as measured at right angles to and parallel with the East line thereof.

(13)

EXHIBIT ___1___
PAGE _____13___

9014710032.rdw

## APPOINTMENT OF SUCCESSOR TRUSTEE

0210261871

KNOW ALL MEN BY THESE PRESENTS that ANDREW NEILSON, as grantors, and Chicago Title Insurance Company, as the trustee, and Mortgage Electronic Registration Systems, Inc. solely as nominee for WEALTHBRIDGE MORTGAGE CORP., is the beneficiary under that certain trust deed dated 09/19/08, and recorded 09/24/08, as 2008-066465 of the Mortgage Records of Clackamas County, Oregon. The undersigned, who is the present beneficiary under said trust deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints Northwest Trustee Services, Inc., whose address is P.O. Box 997, Bellevue, WA 98009-0997 as successor trustee under said trust deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

Wells Fargo Bank, NA, by Kathy Taggart as Attorney in Fact by Power of Attorney Recorded 05-24-06 under Auditor's File No. 2006-047416

Title: _____ Attorney In Fact

State of Washington          )
                             ) ss.
County of King               )

This instrument was acknowledged before me on July 29, 2009 by Kathy Taggart as Attorney In Fact of Wells Fargo Bank, NA.

Notary signature
My commission expires 12-28-12

BRIAN C. PHAM
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
12-28-12

APPOINTMENT OF SUCCESSOR TRUSTEE
Re: Trust Deed from
NEILSON, ANDREW
            Grantor
    to
Northwest Trustee Services, Inc.
            Trustee          File No. 7023.04695

After recording return to:
Kathy Taggart
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

EXHIBIT 2
PAGE 1

FATCO NO. 142156-TO

Clackamas County Official Records          2009-054488
Sherry Hall, County Clerk

$31.00

01330425200900544880010010          07/30/2009 03:12:51 PM

M-SUBT        Cnt=1 Stn=10 LESLIE
$5.00 $16.00 $10.00



| Clackamas County Official Records Sherry Hall, County Clerk | 2009-054487 |
|---|---|



After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Kathy Taggart
P.O. Box 997
Bellevue, WA 98009-0997

**2009-054487**

**$31.00**

01330424200900544870010013

07/30/2009 03:12:51 PM

M-TDA          Cnt=1 Stn=10 LESLIE
$5.00 $16.00 $10.00

---

7023.04695/NEILSON, ANDREW

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Wells Fargo Bank, NA, whose address is , 3476 STATEVIEW BLVD., FORT MILL, SC 29715, all beneficial interest under that certain deed of trust, dated 09/19/08, executed by ANDREW NEILSON, Grantors, to Chicago Title Insurance Company, Trustee, and recorded on 09/24/08, as 2008-066465, Records of Clackamas County, Oregon, describing land therein as:

PART OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN, IN THE COUNTY OF CLACKAMAS AND STATE OF OREGON, DESCRIBED AS FOLLOWS: THE SOUTH 6.00 ACRES (THE NORTH AND SOUTH BOUNDARY LINE OF SAID 6.00 ACRES BEING PARALLEL WITH THE SOUTH LINE OF THE FOLLOWING DESCRIBED TRACT OF LAND), OF WHICH THE SAID 6.00 ACRES IS A PART, TO WIT: BEGINNING AT A POINT IN THE CENTER OF THE COUNTY ROAD AT THE NORTHWEST CORNER OF THE EAST HALF OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN; RUNNING THENCE SOUTH FOLLOWING COUNTY ROAD, 93.00 RODS TO AN ANGLE IN SAID ROAD; THENCE ABOUT 63.00 RODS IN A SOUTHEASTERLY DIRECTION FOLLOWING SAID ROAD TO JAMES STRADLEY'S LAND (BEING LAND FORMERLY OWNER BY JOHN H. JOHNSON); THENCE NORTH 100.00 RODS TO E. BALL'S LAND; THENCE 60.00 RODS TO THE PLACE OF BEGINNING. EXCEPTING THE EAST 724 FEET OF SOUTH 6.00 ACRES AS MEASURED AT RIGHT ANGLES TO AND PARALLEL WITH THE EAST LINE THEREOF.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: July 29, 2009

Mortgage Electronic Registration Systems, Inc.

Title:    Vice President

State of Washington              )
                                 ) ss.
County of King                   )

This instrument was acknowledged before me on July 29, 2009 by Kathy Taggart as Vice President of Mortgage Electronic Registration Systems, Inc.

Notary signature

My commission expires:  12-28-12

---

BRIAN C. PHAM
STATE OF WASHINGTON
**NOTARY PUBLIC**
MY COMMISSION EXPIRES
12-28-12

---

FATCO No. 147156-TO

EXHIBIT  3
PAGE      1

Clackamas County Official Records
Sherry Hall, County Clerk

2009-054489

$36.00

013304262009005448900030031

07/30/2009 03:12:51 PM

F-NDE          Cnt=1  Stn=4
$10.00 $16.00 $10.00



# CLACKAMAS
# COUNTY
# RECORDING
# DEPARTMENT
# CERTIFICATE
# PAGE

**This page must be included
if document is re-recorded.**

**Do Not remove from original document.**

EXHIBIT 4
PAGE 1



## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain trust deed made by ANDREW NEILSON, as grantors, to Chicago Title Insurance Company, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for WEALTHBRIDGE MORTGAGE CORP., as beneficiary, dated 09/19/08, recorded 09/24/08, in the mortgage records of Clackamas County, Oregon, as 2008-066465, and subsequently assigned to Wells Fargo Bank, NA by Assignment, covering the following described real property situated in said county and state, to wit:

PART OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN, IN THE COUNTY OF CLACKAMAS AND STATE OF OREGON, DESCRIBED AS FOLLOWS: THE SOUTH 6.00 ACRES (THE NORTH AND SOUTH BOUNDARY LINE OF SAID 6.00 ACRES BEING PARALLEL WITH THE SOUTH LINE OF THE FOLLOWING DESCRIBED TRACT OF LAND), OF WHICH THE SAID 6.00 ACRES IS A PART, TO WIT: BEGINNING AT A POINT IN THE CENTER OF THE COUNTY ROAD AT THE NORTHWEST CORNER OF THE EAST HALF OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN; RUNNING THENCE SOUTH FOLLOWING COUNTY ROAD, 93.00 RODS TO AN ANGLE IN SAID ROAD; THENCE ABOUT 63.00 RODS IN A SOUTHEASTERLY DIRECTION FOLLOWING SAID ROAD TO JAMES STRADLEY'S LAND (BEING LAND FORMERLY OWNER BY JOHN H. JOHNSON); THENCE NORTH 100.00 RODS TO E. BALL'S LAND; THENCE 60.00 RODS TO THE PLACE OF BEGINNING. EXCEPTING THE EAST 724 FEET OF SOUTH 6.00 ACRES AS MEASURED AT RIGHT ANGLES TO AND PARALLEL WITH THE EAST LINE THEREOF.

PROPERTY ADDRESS:   12010 SOUTHEAST WINSTON ROAD
                    DAMASCUS, OR 97089

There is a default by the grantor or other person owing an obligation or by their successor in interest, the performance of which is secured by said trust deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $3,075.93 beginning 03/01/09; plus late charges of $137.22 each month beginning 03/16/09; plus prior accrued late charges of $0.00; plus advances of $15.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said trust deed immediately due and payable, said sums being the following, to wit: $411,135.64 with interest thereon at the rate of 7 percent per annum beginning 02/01/09; plus late charges of $137.22 each month beginning 03/16/09 until paid; plus prior accrued late charges of $0.00; plus advances of $15.00; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

<table>
<tr><td>

NOTICE OF DEFAULT AND ELECTION TO SELL

RE: Trust Deed from
NEILSON, ANDREW
    Grantor
      to
Northwest Trustee Services, Inc.,
    Successor Trustee    File No. 7023.04695

</td><td>

For Additional Information:
After Recording return to:
Kathy Taggart
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997
(425) 586-1900

</td></tr>
</table>

EXHIBIT 4
PAGE 2

Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose the trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time grantor executed the trust deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the obligations secured by the trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and reasonable fees of trustee's attorneys.

The sale will be held at the hour of 10:00 o'clock A.M., in accord with the standard of time established by ORS 187.110 on **December 4, 2009**, at the following place:  in the courtyard located directly to the north of the main entrance of the Clackamas County Courthouse, 807 Main Street near the arbor, in the City of Oregon City, County of Clackamas, State of Oregon, which is the hour, date and place last set for the sale.

Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.745 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice.  Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid.  Lender bid information is also available at the trustee's website, www.northwesttrustee.com.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or trust deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753.  Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

**The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference.  You may also access sale status at www.northwesttrustee.com.**

Northwest Trustee Services, Inc., Trustee
Northwest Trustee Services, Inc.

STATE OF WASHINGTON )
                                              ) ss.
COUNTY OF KING           )

I certify that I know or have satisfactory evidence that Kathy Taggart is the person who appeared before me, and said person acknowledged that she signed this instrument, on oath stated that she was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: July 29, 2009

BRIAN C. PHAM
STATE OF WASHINGTON
**NOTARY PUBLIC**
MY COMMISSION EXPIRES
12-28-12

NOTARY PUBLIC in and for the State of
Washington, residing at BELLEVUE
My commission expires 12-28-12

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

EXHIBIT  4
PAGE  3

| Rescission of Notice of Default | | Clackamas County Official Records<br>Sherry Hall, County Clerk | **2010-048211** |
|---|---|---|---|
| Re: Trust Deed from<br>ANDREW NEILSON                    Grantor<br>                    To<br>Northwest Trustee Services, Inc.        Trustee | | 0142374320100048211001010010 | **$47.00** |
| | | | 08/10/2010 02:38:51 PM |
| After Recording Return to<br>Attn: Kathy Taggart<br>**Northwest Trustee Services, Inc.**<br>P.O. Box 997<br>Bellevue, WA 98009-0997 | | F-MDR        Cnt=1  Stn=4  KANNA<br>$5.00 $16.00 $16.00 $10.00 | |

Reference is made to that certain trust deed dated 09/19/08 in which ANDREW NEILSON was grantor, Chicago Title Insurance Company was trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for WEALTHBRIDGE MORTGAGE CORP. was beneficiary and recorded 09/24/08, as 2008-066465 of the mortgage records of Clackamas County, Oregon. The trust deed conveyed to the trustee the following real property situated in said county:

As described in said Trust Deed

A notice of grantor's default under said trust deed, containing the beneficiary's or trustee's election to sell all or part of the above described real property to satisfy grantor's obligations secured by the trust deed was recorded 07/30/09, in the mortgage records of Clackamas County, as 2009-054489.

NOW, THEREFORE, notice hereby is given that the undersigned trustee does hereby rescind, cancel and withdraw the notice of default and election to sell. It being understood, however, that this rescission shall not be construed as waiving or affecting any breach or default—past, present or future—under the trust deed or as impairing any right or remedy thereunder, or as modifying or altering in any respect any of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election without prejudice, not to cause a sale to be made pursuant to the notice so recorded.

IN WITNESS WHEREOF, the undersigned trustee has executed this document; if the undersigned is a corporation, it has caused its name to be signed and seal affixed by an officer duly authorized thereto by order of its Board of Directors.

Dated: August 9, 2010

Northwest Trustee Services, Inc., Trustee
Northwest Trustee Services, Inc. is successor by
merger to Northwest Trustee Services, PLLC
(formerly known as Northwest Trustee Services,
LLC)

STATE OF WASHINGTON )
                                          ) ss.
COUNTY OF KING          )

I certify that I know or have satisfactory evidence that Kathy Taggart is the person who appeared before me, and said person acknowledged that she signed this instrument, on oath stated that she was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: August 9, 2010

NOTARY PUBLIC in and for the State of
Washington, residing at Bellevue
My commission expires 12-28-12

File Number:        7023.04695

```
BRIAN C. PHAM
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
12-28-12
```

EXHIBIT    5
PAGE _____ 1

| Clackamas County Official Records<br>Sherry Hall, County Clerk | 2010-048212 |
| --- | --- |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ | $52.00 |
| 01423746201000482120020030 | 08/10/2010 02:38:51 PM |

F-NDE          Cnt=1  Stn=4  KANNA
$10.00 $16.00  $16.00 $10.00



# CLACKAMAS
# COUNTY
# RECORDING
# DEPARTMENT
# CERTIFICATE
# PAGE

**This page must be included
if document is re-recorded.
Do Not remove from original document.**

EXHIBIT ___6___
PAGE ___1___

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain trust deed made by ANDREW NEILSON, as grantors, to Chicago Title Insurance Company, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for WEALTHBRIDGE MORTGAGE CORP., as beneficiary, dated 09/19/08, recorded 09/24/08, in the mortgage records of Clackamas County, Oregon, as 2008-066465, and subsequently assigned to Wells Fargo Bank, NA by Assignment recorded as 2009-054487, covering the following described real property situated in said county and state, to wit:

PART OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN, IN THE COUNTY OF CLACKAMAS AND STATE OF OREGON, DESCRIBED AS FOLLOWS: THE SOUTH 6.00 ACRES (THE NORTH AND SOUTH BOUNDARY LINE OF SAID 6.00 ACRES BEING PARALLEL WITH THE SOUTH LINE OF THE FOLLOWING DESCRIBED TRACT OF LAND), OF WHICH THE SAID 6.00 ACRES IS A PART, TO WIT: BEGINNING AT A POINT IN THE CENTER OF THE COUNTY ROAD AT THE NORTHWEST CORNER OF THE EAST HALF OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN; RUNNING THENCE SOUTH FOLLOWING COUNTY ROAD, 93.00 RODS TO AN ANGLE IN SAID ROAD; THENCE ABOUT 63.00 RODS IN A SOUTHEASTERLY DIRECTION FOLLOWING SAID ROAD TO JAMES STRADLEY'S LAND (BEING LAND FORMERLY OWNER BY JOHN H. JOHNSON); THENCE NORTH 100.00 RODS TO E. BALL'S LAND; THENCE 60.00 RODS TO THE PLACE OF BEGINNING. EXCEPTING THE EAST 724 FEET OF SOUTH 6.00 ACRES AS MEASURED AT RIGHT ANGLES TO AND PARALLEL WITH THE EAST LINE THEREOF.

PROPERTY ADDRESS:   12010 SOUTHEAST WINSTON ROAD
                    DAMASCUS, OR 97089

There is a default by the grantor or other person owing an obligation or by their successor in interest, the performance of which is secured by said trust deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums:  monthly payments of $3,075.93 beginning 04/01/09; plus late charges of $137.22 each month beginning 04/16/09; plus prior accrued late charges of ($960.54); plus advances of $2,528.44 that represent bankruptcy fees, property inspections and paid attorney fees and costs; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said trust deed immediately due and payable, said sums being the following, to wit: $410,789.56 with interest thereon at the rate of 7 percent per annum beginning 03/01/09; plus late charges of $137.22 each month beginning 04/16/09 until paid; plus prior accrued late charges of ($960.54); plus advances of $2,528.44 that represent bankruptcy fees, property inspections and paid attorney fees and costs; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default;  any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

<table>
<tr><td>

**NOTICE OF DEFAULT AND ELECTION TO SELL**

RE: Trust Deed from
NEILSON, ANDREW
    Grantor
      to
Northwest Trustee Services, Inc.,
    Successor Trustee     File No. 7023.04695

</td></tr>
</table>

**For Additional Information:**
**After Recording return to:**
**Kathy Taggart**
**Northwest Trustee Services, Inc.**
**P.O. Box 997**
**Bellevue, WA 98009-0997**
**(425) 586-1900**

FIRST AMERICAN

2

EXHIBIT 6
PAGE 2

Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose the trust deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time grantor executed the trust deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the obligations secured by the trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and reasonable fees of trustee's attorneys.

The sale will be held at the hour of 10:00 o'clock A.M., in accord with the standard of time established by ORS 187.110 on **December 16, 2010**, at the following place: in the courtyard located directly to the north of the main entrance of the Clackamas County Courthouse, 807 Main Street near the arbor, in the City of Oregon City, County of Clackamas, State of Oregon, which is the hour, date and place last set for the sale.

Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.745 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or trust deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

**The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com.**

Northwest Trustee Services, Inc.-, Trustee
Northwest Trustee Services, Inc.

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that Kathy Taggart is the person who appeared before me, and said person acknowledged that she signed this instrument, on oath stated that she was authorized to execute the instrument and acknowledged it as an Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: August 9, 2010

BRIAN C. PHAM
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
12-28-12

NOTARY PUBLIC in and for the State of
Washington, residing at Bellevue
My commission expires 12-28-12

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

 

EXHIBIT 6
PAGE 3

**RECORDING COVER SHEET**
Pursuant to ORS 205.234

After recording return to:

Northwest Trustee Services, Inc.
As successor trustee
Attention:  Kathy Taggart
P.O. Box 997
Bellevue, WA  98009-0997

Clackamas County Official Records
Sherry Hall, County Clerk

2010-075301

$157.00

0145363320100075301016 0166   11/24/2010 02:40:26 PM

F-MAF        Cnt=4  Stn=6  KARLYNWUN
$80.00 $15.00 $16.00 $16.00 $10.00 $20.00...

1. **AFFIDAVIT OF MAILING – NOTICE OF FORECLOSURE**

2. **NOTICE OF FORECLOSURE**

3. **AFFIDAVIT OF NO TIMLEY RECEIPT OF REQUEST FOR LOAN
   MODIFICATION/MEETING UNDER ORS 86.737**

4. **AFFIDAVIT OF MAILING – TRUSTEE'S NOTICE OF SALE**

5. **TRUSTEE'S NOTICE OF SALE**

6. **PROOF OF SERVICE**

7. **AFFIDAVIT OF PUBLICATION**

**Original Grantor(s) on Trust Deed:  ANDREW NEILSON**

**Beneficiary:  Mortgage Electronic Registration Systems, Inc. solely as nominee for
WEALTHBRIDGE MORTGAGE CORP.**

**THIS COVER SHEET HAS BEEN PREPARED BY THE PERSON PRESENTING THE
ATTACHED INSTRUMENT FOR RECORDING.  ANY ERRORS CONTAINED IN
THIS COVER SHEET DO NOT AFFECT THE TRANSACTION(S) CONTAINED IN
THE INSTRUMENT ITSELF.**

EXHIBIT___7____
PAGE_____1___

### AFFIDAVIT OF MAILING NOTICE OF FORECLOSURE

STATE OF WASHINGTON, County of KING) ss:

I, the undersigned, being first duly sworn, depose and say and certify that:

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original Notice of Foreclosure given under the terms of that certain deed described in said notice.

I gave notice of the sale of the real property described in the attached Notice of Foreclosure as required by Section 20 of Chapter 19, Oregon Laws 2008 ("Bill") by mailing a copy thereof by both first class and certified mail with return receipt requested to each of the following named persons (or their legal representatives, where so indicated) at their respective last known address, to-wit:

See Attached Exhibit A

Said persons include (a) the grantor in the trust deed, (b) any successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice and to the occupant residing in the Property.

Each of the notices so mailed was certified to be a true copy of the original Notice of Foreclosure, each such copy was contained in a sealed envelope, with postage thereon fully prepaid, and was deposited by me in the United States post office at Bellevue, Washington, on _8-11-10_. With respect to each person listed above, one such notice was mailed with postage thereon sufficient for first class delivery to the address indicated, and another such notice was mailed with a proper form to request and obtain a return receipt and postage thereon in the amount sufficient to accomplish the same. Each of said notices was mailed after the notice of default and election to sell was recorded. The form of the notice complies with Sections 20 and 21 of the Bill and a copy is enclosed with this affidavit.

As used herein, the singular includes the plural, trustee includes successor trustee, and person includes corporation and any other legal or commercial entity.

STATE OF WASHINGTON    )
                                   ) ss.
COUNTY OF KING           )

I certify that I know or have satisfactory evidence that _Michelle Nuño_ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _8·11·10_

NOTARY PUBLIC in and for the State of
Washington, residing at _Kent_
My commission expires _9·30·12_

| |
|---|
| **AFFIDAVIT OF MAILING NOTICE OF FORECLOSURE** |
| RE: Trust Deed from |
| NEILSON, ANDREW |
|            Grantor |
|          to |
| Northwest Trustee Services, Inc., |
|          Trustee |
| File No. 7023.04695 |

ASHLEY ANN HOGAN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
9-30-12

After recording return to:
Northwest Trustee Services, Inc.
Attn: Kathy Taggart
P.O. Box 997
Bellevue, WA 98009-0997

2

EXHIBIT _7_
PAGE _2_

**EXHIBIT A**

ANDREW NEILSON
12010 SOUTHEAST WINSTON ROAD
DAMASCUS, OR 97089

ANDREW NEILSON
c/o Brian D Turner, Atty.
1631 NE Broadway #120
Portland, OR 97232

Occupant(s)
12010 SOUTHEAST WINSTON ROAD
DAMASCUS, OR 97089

Kenneth S Eiler, Trustee
515 NW Saltzman Rd
PMB 810
Portland, OR 97229

7023.04695
Kathy Taggart

3

EXHIBIT ___7___
PAGE _____3_____

## NOTICE:
## YOU ARE IN DANGER OF LOSING YOUR PROPERTY
## IF YOU DO NOT TAKE ACTION IMMEDIATELY

**This notice is about your mortgage loan on your property at:**
12010 SOUTHEAST WINSTON ROAD
DAMASCUS, OR 97089
DAMASCUS, OR 97089

Your lender has decided to sell this property because the money due on your mortgage loan has not been paid on time or because you have failed to fulfill some other obligation to your lender. This is sometimes called "foreclosure."

The amount you would have had to pay as of 08/11/2010 (date) to bring your mortgage loan current was $57482.33. The amount you must now pay to bring your loan current may have increased since that date.

By law, your lender has to provide you with details about the amount you owe, if you ask. You may call (866) 254-5790 to find out the exact amount you must pay bring your to mortgage loan current and to get other details about the amount you owe.

You may also get these details by sending a request by certified mail to:
Northwest Trustee Services, Inc.
PO Box 997
Bellevue, WA 98009-0997

## THIS IS WHEN AND WHERE YOUR PROPERTY WILL BE SOLD IF YOU
## DO NOT TAKE ACTION:

Date and time: 12/16/2010 at 10:00 AM
Place: in the courtyard located directly to the north of the main entrance of the Clackamas County Courthouse, 807 Main Street near the arbor, Oregon City OR

### THIS IS WHAT YOU CAN DO TO STOP THE SALE:

1. You can pay the amount past due or correct any other default, up to five days before the sale.
2. You can refinance or otherwise pay off the loan in full anytime before the sale.
3. You can request that your lender give you more time or change the terms of your loan.
4. You can sell your home, provided the sale price is enough to pay what you owe.

EXHIBIT___7___
PAGE_____4___

There are government agencies and nonprofit organizations that can give you information about foreclosure and help you decide what to do. For the name and phone number of an organization near you, please call the statewide phone contact number at **800-SAFENET (800-723-3638)**.

You may also wish to talk to a lawyer. If you need help finding a lawyer, you may call the Oregon State Bar's Lawyer Referral Service at **503-684-3763** or toll-free in Oregon at **800-452-7636** or you may visit its Web site at: **www.osbar.org**. Legal assistance may be available if you have a low income and meet federal poverty guidelines. For more information and a directory of legal aid programs, go to **http://www.oregonlawhelp.org**.

Your lender may be willing to modify your loan to reduce the interest rate, reduce the monthly payments or both. You can get information about possible loan modification programs by contacting your lender at 866-254-5790. If you can't reach your lender, you may contact the trustee at the telephone number at the bottom of this notice. If you have already entered into a loan modification with your lender, it is possible that you will not be able to modify your loan again unless your circumstances have changed. Your lender is not obligated to modify your loan.

You may request to meet with your lender to discuss options for modifying your loan. During discussions with your lender, you may have the assistance of a lawyer, a housing counselor or another person of your choosing. To receive a referral to a housing counselor or other assistance available in your community, call this toll-free consumer mortgage foreclosure information number: **800-SAFENET (800-723-3638)**. Many lenders participate in new federal loan modification programs. You can obtain more information about these programs at: **http://www.makinghomeaffordable.gov/**.

IF YOU WANT TO APPLY TO MODIFY YOUR LOAN, YOU MUST FILL OUT AND MAIL BACK THE ENCLOSED "MODIFICATION REQUEST FORM." YOUR LENDER MUST RECEIVE THE FORM BY 09/10/2010, WHICH IS 30 DAYS AFTER THE DATE SHOWN BELOW.

WARNING: You may get offers from people who tell you they can help you keep your property. You should be careful about those offers. Make sure you understand any papers you are asked to sign. If you have questions, talk to a lawyer or one of the organizations mentioned above before signing.

DATED: 08/11/2010
Trustee contact name: Kathy Taggart
Trustee telephone number: 425-586-1900

EXHIBIT __7__
PAGE __5__

7023.04695/NEILSON, ANDREW

EXHIBIT 7
PAGE 6

# LOAN MODIFICATION REQUEST FORM

**Your home is at risk of foreclosure.** There may be options available to help you keep your home. If you want to request a loan modification, you must return this form to the address below by 09/10/2010, *which is 30 days from the date the Trustee signed the accompanying Notice:*

**Northwest Trustee Services, Inc.**
**PO Box 997**
**Bellevue, WA 98009-0997**

There may be options available to you, including:

1) Modifying your loan terms
2) Temporarily lowering payments
3) Scheduling payments to cure the arrears
4) Temporary suspension of payments
5) Other options based on your lender and the type of loan.

In order to discuss your loan options, you should gather and provide the following documents:

1) Last year's tax returns
2) Pay stubs for the last 2 months
3) Bank statements for the last 3 months
4) Other documents showing your financial hardship status
5) Your lender may request that you complete additional forms or provide additional information

**RETURNING THIS REQUEST DOES NOT MODIFY YOUR LOAN.  Your lender is required to contact you within 45 days after you return this form to discuss a possible loan modification. The foreclosure sale will not occur until your lender has contacted you about your request.  YOUR LENDER IS NOT REQUIRED TO MODIFY YOUR LOAN.  The foreclosure sale may proceed if your loan is not modified.**

**REQUEST A MEETING.  Before the lender responds to your request for a loan modification, you may request IN WRITING a meeting with the lender.  Upon receipt of your written request for a meeting, the lender will attempt to contact you by mail, telephone or e-mail to schedule a meeting in person or by telephone at the lender's option.  NOTE:**  It is important that you respond immediately to any contact from your lender to schedule a meeting that you have requested.  If you do not respond within 7 days from the date your lender attempts to contact you to schedule a meeting, your lender may refuse to meet, deny your request for consideration of a loan modification and resume foreclosure activities.

File No.          7023.04695
Loan No.:         0210261871
Borrower Name:    NEILSON, ANDREW
Property Address: 12010  SOUTHEAST WINSTON ROAD

DAMASCUS, OR 97089, DAMASCUS, OR 97089

Please indicate where your lender may contact you:

Mailing Address: _____

Home Telephone Number: _____    Work Telephone Number: _____

Email: _____ (providing your e-mail address authorizes the lender or its agent to communicate with you by e-mail concerning your request for loan modification consideration and for the purpose of scheduling and confirming a meeting.

EXHIBIT____7____
PAGE_____7____

Affidavit of No Timely Receipt of Request for Loan
Modification or Meeting ORS 86.737
Re: Trust Deed from
**ANDREW NEILSON**
        Grantor
        to
**Northwest Trustee Services, Inc.**
        Trustee        File No. **7023.04695**

### Affidavit of No Timely Receipt of Request for Loan Modification/Meeting
### Under ORS 86.737

**Original Loan Amount:** $412,500.00
**Borrower name(s):** NEILSON, ANDREW
**Property Address:** 12010  SOUTHEAST WINSTON ROAD, DAMASCUS, OR 97089

The undersigned is an employee of the trustee under the trust deed securing the above-referenced loan
and is executing this affidavit on behalf of the trustee.  The undersigned is at least 18 years of age and
competent to testify in a court of law and, having personal knowledge of the matters set forth below,
represents and avers, under the penalty of perjury, that the following is true and correct:
**No Request for Meeting or Loan Modification Received.**  The trustee duly mailed to the
borrower(s) identified above the notice required by ORS 86.737 ("Notice").  With the Notice, the
trustee also included the form contemplated by ORS 86.737 on which the borrower(s) could elect to
ask the beneficiary to consider granting a loan modification ("Form").  The Notice also invited the
borrower(s) to request a meeting.  The Notice and/or request form instructed the borrower(s) to submit
the request for modification and/or meeting to the trustee at the address provided in the Notice and/or
form.  The Notice also provided a deadline date by which the trustee would need to receive from the
borrower(s) a request for loan modification or request for a meeting.  The trustee did not receive a
request for loan modification form or request for meeting from the borrower(s) before the deadline set
forth in the Notice.
**Limited Agency.**  In executing this affidavit, the trustee is acting as the beneficiary's agent for the
sole and limited purpose of executing this affidavit.
**Disclaimer.**  The trustee is executing and recording this affidavit only because title insurers have
compelled it to do so as a title insurance underwriting requirement.  The trustee does not believe that
an affidavit is legally required by ORS 86.737 in circumstances where the borrower has not timely
submitted a request for a loan modification or a meeting under the ORS 86.737.
**No Statement Concerning Borrower's Other Contacts with the Beneficiary.**  Nothing in this
affidavit may be construed as an averment that the borrower has not contacted the beneficiary to
arrange a meeting or discuss a loan modification or other arrangement outside the procedural
framework of ORS 86.737.

DATED: **November 1, 2010**                      Northwest Trustee Services, Inc.

                                                BY:

EXHIBIT ___7___
PAGE ___8___

STATE OF WASHINGTON    )
                                         ) ss.
COUNTY OF KING            )

        I certify that I know or have satisfactory evidence that Kathy Taggart is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:  November 1, 2010

                                            _____
                                            NOTARY PUBLIC in and for the State of
                                            Washington, residing at _Carnation_
                                            My commission expires __11-9-13__

```
+--------------------------------------+
|      CASANDRA F. BARBER              |
|       STATE OF WASHINGTON            |
|        NOTARY PUBLIC                 |
|    MY COMMISSION EXPIRES             |
|          11-09-13                    |
+--------------------------------------+
```

EXHIBIT___7___
PAGE____9___

## AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE

STATE OF WASHINGTON, County of KING) ss:

I, the undersigned, being first duly sworn, depose and say and certify that:

At all times hereinafter mentioned, I was and now am a resident of the State of Washington, a competent person over the age of eighteen years and not the beneficiary or beneficiary's successor in interest named in the attached original notice of sale given under the terms of that certain deed described in said notice.

I gave notice of the sale of the real property described in the attached notice of sale by mailing a copy thereof by both first class and certified mail with return receipt requested to each of the following named persons (or their legal representatives, where so indicated) at their respective last known address, to-wit:

Swift Homes, LLC
c/o Reeves, Kahn & Hennessy, Atty
P.O. Box 86100
Portland, OR 97286

State of Oregon
Dept. of Revenue
955 Center St. NE
Salem, OR 97301

John Kroger, Attorney General
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

ANDREW NEILSON
12010 SOUTHEAST WINSTON ROAD
DAMASCUS, OR 97089

Occupant(s)
12010 SOUTHEAST WINSTON ROAD
DAMASCUS, OR 97089

ANDREW NEILSON
c/o Brian D Turner, Atty.
1631 NE Broadway #120
Portland, OR 97232

Kenneth S Eiler, Trustee
515 NW Saltzman Rd
PMB 810
Portland, OR 97229

Said persons include (a) the grantor in the trust deed, (b) any successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice, (c) any person, including the Department of Revenue or any other state agency, having a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice of the lien or interest, and (d) any person requesting notice, as required by ORS 86.785.

Each of the notices so mailed was certified to be a true copy of the original notice of sale, each such copy was contained in a sealed envelope, with postage thereon fully prepaid, and was deposited by me in the United States post office at Bellevue, Washington, on 08/13/10 . With respect to each person listed above, one such notice was mailed with postage thereon sufficient for first class delivery to the address indicated, and another such notice was mailed with a proper form to request and obtain a return receipt and postage thereon in the amount sufficient to accomplish the same. Each of said notices was mailed after the notice of default and election to sell described in said notice of sale was recorded.

As used herein, the singular includes the plural, trustee includes successor trustee, and person includes corporation and any other legal or commercial entity.

STATE OF WASHINGTON          )
                             ) ss.
COUNTY OF KING               )

*Marissa Kraus*

I certify that I know or have satisfactory evidence that *Marissa Kraus* is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 8/13/10

NOTARY PUBLIC in and for the State of
Washington, residing at *Kent*
My commission expires *9-30-12*

AFFIDAVIT OF MAILING TRUSTEE'S NOTICE OF SALE
RE: Trust Deed from
NEILSON, ANDREW
                    **Grantor**
             **to**
Northwest Trustee Services, Inc.,
             **Trustee**          **File No. 7023.04695**

ASHLEY ANN HOGAN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
9-30-12

After recording return to:
Northwest Trustee Services, Inc.
Successor by merger to Northwest Trustee Services, PLLC
(formerly known as Northwest Trustee Services, LLC)
Attn: Kathy Taggart
P.O. Box 997
Bellevue, WA 98009-0997

10

EXHIBIT    7
PAGE    10

TRUSTEE'S NOTICE OF SALE

Reference is made to that certain trust deed made by ANDREW NEILSON, as grantor, to Chicago Title Insurance Company, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for WEALTHBRIDGE MORTGAGE CORP., as beneficiary, dated 09/19/08, recorded 09/24/08, in the mortgage records of Clackamas County, Oregon, as 2008-066465 and subsequently assigned to Wells Fargo Bank, NA by Assignment recorded as 2009-054487, covering the following described real property situated in said county and state, to wit:

PART OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN, IN THE COUNTY OF CLACKAMAS AND STATE OF OREGON, DESCRIBED AS FOLLOWS: THE SOUTH 6.00 ACRES (THE NORTH AND SOUTH BOUNDARY LINE OF SAID 6.00 ACRES BEING PARALLEL WITH THE SOUTH LINE OF THE FOLLOWING DESCRIBED TRACT OF LAND), OF WHICH THE SAID 6.00 ACRES IS A PART, TO WIT: BEGINNING AT A POINT IN THE CENTER OF THE COUNTY ROAD AT THE NORTHWEST CORNER OF THE EAST HALF OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN; RUNNING THENCE SOUTH FOLLOWING COUNTY ROAD, 93.00 RODS TO AN ANGLE IN SAID ROAD; THENCE ABOUT 63.00 RODS IN A SOUTHEASTERLY DIRECTION FOLLOWING SAID ROAD TO JAMES STRADLEY'S LAND (BEING LAND FORMERLY OWNER BY JOHN H. JOHNSON); THENCE NORTH 100.00 RODS TO E. BALL'S LAND; THENCE 60.00 RODS TO THE PLACE OF BEGINNING. EXCEPTING THE EAST 724 FEET OF SOUTH 6.00 ACRES AS MEASURED AT RIGHT ANGLES TO AND PARALLEL WITH THE EAST LINE THEREOF.

PROPERTY ADDRESS:        12010 SOUTHEAST WINSTON ROAD
                         DAMASCUS, OR 97089

Both the beneficiary and the trustee have elected to sell the real property to satisfy the obligations secured by the trust deed and a notice of default has been recorded pursuant to Oregon Revised Statutes 86.735(3); the default for which the foreclosure is made is grantor's failure to pay when due the following sums: monthly payments of $3,075.93 beginning 04/01/09; plus late charges of $137.22 each month beginning 04/16/09; plus prior accrued late charges of ($960.54); plus advances of $2,528.44 that represent bankruptcy fees, property inspections and paid attorney fees and costs; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

By reason of said default the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, said sums being the following, to wit: $410,789.56 with interest thereon at the rate of 7 percent per annum beginning 03/01/09; plus late charges of $137.22 each month beginning 04/16/09 until paid; plus prior accrued late charges of ($960.54); plus advances of $2,528.44 that represent bankruptcy fees, property inspections and paid attorney fees and costs; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable.

WHEREFORE, notice hereby is given that the undersigned trustee will on December 16, 2010 at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS 187.110, at the following place: in the courtyard located directly to the north of the main entrance of the Clackamas County Courthouse, 807 Main Street near the arbor, in the City of Oregon City, County of Clackamas, State of Oregon, sell at public auction to the highest bidder for cash the interest in the described real property which the grantor had or had power to convey at the time of the execution by grantor of the trust deed, together with any interest which the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.757 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com. Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the

II

EXHIBIT____7____
PAGE_____II____

amounts provided by said ORS 86.753.  Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary or if required by the terms of the loan documents.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

## NOTICE TO RESIDENTIAL TENANTS

The property in which you are living is in foreclosure. A foreclosure sale is scheduled for December 16, 2010. Unless the lender who is foreclosing on this property is paid, the foreclosure will go through and someone new will own this property.

The following information applies to you only if you occupy and rent this property as a residential dwelling under a legitimate rental agreement. The information does not apply to you if you own this property or if you are not a residential tenant.

If the foreclosure goes through, the business or individual who buys this property at the foreclosure sale has the right to require you to move out. The buyer must first give you an eviction notice in writing that specifies the date by which you must move out. The buyer may not give you this notice until after the foreclosure sale happens. If you do not leave before the move-out date, the buyer can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing.

### FEDERAL LAW REQUIRES YOU TO BE NOTIFIED

IF YOU ARE OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING UNDER A LEGITIMATE RENTAL AGREEMENT, FEDERAL LAW REQUIRES THE BUYER TO GIVE YOU NOTICE IN WRITING A CERTAIN NUMBER OF DAYS BEFORE THE BUYER CAN REQUIRE YOU TO MOVE OUT. THE FEDERAL LAW THAT REQUIRES THE BUYER TO GIVE YOU THIS NOTICE IS EFFECTIVE UNTIL DECEMBER 31, 2012. Under federal law, the buyer must give you at least 90 days' notice in writing before requiring you to move out. If you are renting this property under a fixed-term lease (for example, a six-month or one-year lease), you may stay until the end of your lease term. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 90 days, even if you have a fixed-term lease with more than 90 days left.

### STATE LAW NOTIFICATION REQUIREMENTS

IF THE FEDERAL LAW DOES NOT APPLY, STATE LAW STILL REQUIRES THE BUYER TO GIVE YOU NOTICE IN WRITING BEFORE REQUIRINGYOU TO MOVE OUT IF YOU ARE OCCUPYING AND RENTING THE PROPERTY AS A TENANT IN GOOD FAITH.  EVEN IF THE FEDERAL LAW REQUIREMENT IS NO LONGER EFFECTIVE AFTER DECEMBER 31, 2012, THE REQUIREMENT UNDER STATE LAW STILL APPLIES TO YOUR SITUATION. Under state law, if you have a fixed-term lease (for example, a six-month or one-year lease), the buyer must give you at least 60 days' notice in writing before requiring you to move out. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 30 days, even if you have a fixed-term lease with more than 30 days left.

If you are renting under a month-to-month or week-to-week rental agreement, the buyer must give you at least 30 days' notice in writing before requiring you to move out.

IMPORTANT: For the buyer to be required to give you notice under state law, you must prove to the business or individual who is handling the foreclosure sale that you are occupying and renting this property as a residential dwelling under a legitimate rental agreement. The name and address of the business or individual who is handling the foreclosure sale is shown on this notice under the heading 'TRUSTEE.' You must mail or deliver your proof not later than November 16, 2010 (30 days before the date first set for the foreclosure sale). Your proof must be in writing and should be a copy of your rental agreement or lease. If you do not have a written rental agreement or lease, you can provide other proof, such as receipts for rent you paid.

### ABOUT YOUR SECURITY DEPOSIT

Under state law, you may apply your security deposit and any rent you paid in advance against the current rent you owe your landlord. To do this, you must notify your landlord in writing that you want to subtract the amount of your security deposit or prepaid rent from your rent payment. You may do this only for the rent you owe your current landlord. If you do this, you must do so before the foreclosure sale. The business or individual who buys this property at the foreclosure sale is not responsible to you for any deposit or prepaid rent you paid to your landlord.

### ABOUT YOUR TENANCY AFTER THE FORECLOSURE SALE

The business or individual who buys this property at the foreclosure sale may be willing to allow you to stay as a tenant instead of requiring you to move out. You should contact the buyer to discuss that possibility if you would like to stay. Under state law, if the buyer accepts rent from you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the buyer becomes your new landlord

12

EXHIBIT___7___
PAGE____12___

and must maintain the property. Otherwise, the buyer is not your landlord and is not responsible for maintaining the property on your behalf and you must move out by the date the buyer specifies in a notice to you.

YOU SHOULD CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD TO ANOTHER BUSINESS OR INDIVIDUAL OR UNTIL A COURT OR A LENDER TELLS YOU OTHERWISE. IF YOU DO NOT PAY RENT, YOU CAN BE EVICTED. AS EXPLAINED ABOVE, YOU MAY BE ABLE TO APPLY A DEPOSIT YOU MADE OR PREPAID RENT YOU PAID AGAINST YOUR CURRENT RENT OBLIGATION. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE AND ANY NOTICE YOU GIVE OR RECEIVE CONCERNING THE APPLICATION OF YOUR DEPOSIT OR YOUR PREPAID RENT

IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR HOME WITHOUT FIRST GOING TO COURT TO EVICT YOU. FOR MORE INFORMATION ABOUT YOUR RIGHTS, YOU MAY WISH TO CONSULT A LAWYER. If you believe you need legal assistance with this matter, you may contact the Oregon State Bar Association (16037 Upper Boones Ferry Road, Tigard, Oregon 97224, (503)620-0222, toll-free in Oregon (800)452-8260) and ask for lawyer referral service. If you do not have enough money to pay a lawyer and are otherwise eligible, you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance; a county-by-county listing of legal aid resources may be found on the Internet at http://www.osbar.org/public/ris/lowcostlegalhelp/legalaid.html.

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

Dated:   ~~AUGUST   10~~, 20 10

Northwest Trustee Services, Inc

By
Assistant Vice President,
Northwest Trustee Services, Inc.

For further information, please contact:

Kathy Taggart
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997
**(425) 586-1900**
File No.7023.04695/NEILSON, ANDREW

State of Washington, County of King) ss:

I, the undersigned, certify that the foregoing is a complete and accurate copy of the original trustee's notice of sale.

_____                    By Authorized Signer

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EXHIBIT____7____
PAGE_____13____

# FEI, LLC
## Affidavit of Posting and Service

State of Oregon
County of Clackamas

JEFF TRUMP, being sworn, says:

- That I am over 18 years of age, a resident of Oregon, and not a party to the proceeding referred to in the attached Notice of Trustee's Sale

- That my business address is PO BOX 822424, Vancouver, WA.

- That I posted a copy of the Notice of Trustee's Sale on the parcel of land described in the attached Notice of Trustee's Sale, commonly referred to as 12010  SOUTHEAST WINSTON ROAD, DAMASCUS, OR 97089 in a conspicuous place on 08/14/2010 at 10:37 am

- That I personally served a copy of the Notice of Trustee's Sale upon an adult occupant of the real property in the manner in which a summons is served by delivering to or leaving with JESSICA HARRIS, a person over the age of eighteen (18) years, then residing therein on Tuesday, August 17, 2010, at 12:53 pm.

Signed in Washington County, Oregon by:

*Jeff Trump*  9/12/10
Signature<br>Date

1002.130317

State of Oregon
County of *Washington*

On this *12th* day of *September* in the year of *2010*, before me a Notary Public, Personally appeared *Jeff Trump*, known or identified to me to be the person whose name is subscribed to the within instrument and being by me first duly sworn, declared that the statements therein are true, and acknowledged to me that he/she executed the same.



Notary Public for Oregon
Residing at *Vancouver Wa*
Commission expires: *2-28-14*

OFFICIAL SEAL
**DESIREE D GILLINGHAM**
NOTARY PUBLIC-OREGON
COMMISSION NO. 446988
MY COMMISSION EXPIRES FEBRUARY 28, 2014


D1581124

EXHIBIT____7____
PAGE_____14___

|U|



**PACIFIC**
PUBLISHING
COMPANY

## Oregon Legal Journal

County of Clackamas

### AFFIDAVIT OF PUBLICATION

State Of Oregon

Invoice Number
26094

I, Sarah Beehler, being first duly sworn, depose and say that I am an authorized representative of the Oregon Legal Journal, a newspaper of general circulation published at 11830 SW Kerr #385  Lake Oswego, OR 97035, in the aforesaid county and state as defined by ORS 193.010 and 193.020; that I know from my personal knowledge that a printed section, 10/07/10 containing Trustee's Notice of Sale legal notices, a printed copy of which is hereto annexed, was inserted into the entire circulation of the said newspaper edition for 4 consecutive dates ending with the issue dated 10/07/10 on behalf of the advertiser FEI LLC.

1002.130317    NEILSON, ANDREW

Subscribed and sworn to me this
10/01/10
SEE ATTACHMENT / EXHIBIT

OFFICIAL SEAL
**BRANDI R WILLIAMS**
NOTARY PUBLIC-OREGON
COMMISSION NO. 433703
MY COMMISSION EXPIRES DECEMBER 14, 2012

FEI LLC
PO Box 210
Bellevue, WA
98009-0219

15

EXHIBIT  7
PAGE  15

TRUSTEE'S NOTICE OF SALE Reference is made to that certain trust deed made by ANDREW NEILSON, as grantor, to Chicago Title Insurance Company, as trustee, in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for WEALTH-BRIDGE MORTGAGE CORP., as beneficiary, dated 09/19/08, recorded 09/24/09, in the mortgage records of Clackamas County, as 2008-066465 and subsequently assigned to Wells Fargo Bank, NA by Assignment recorded as 2009-054487, covering the following described real property situated in said county and state, to wit: PART OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN, IN THE COUNTY OF CLACKAMAS AND STATE OF OREGON, DESCRIBED AS FOLLOWS: THE SOUTH 6.00 ACRES (THE NORTH AND SOUTH BOUNDARY LINE OF SAID 6.00 ACRES BEING PARALLEL WITH THE SOUTH LINE OF THE FOLLOWING DESCRIBED TRACT OF LAND), OF WHICH THE SAID 6.00 ACRES IS A PART, TO WIT: BEGINNING AT A POINT IN THE CENTER OF THE COUNTY ROAD AT THE NORTHWEST CORNER OF THE EAST HALF OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 32, TOWNSHIP 1 SOUTH, RANGE 3 EAST, OF THE WILLAMETTE MERIDIAN; RUNNING THENCE SOUTH FOLLOWING COUNTY ROAD, 93.00 RODS TO AN ANGLE IN SAID ROAD; THENCE ABOUT 63.00 RODS IN A SOUTHEASTERLY DIRECTION FOLLOWING SAID ROAD TO JAMES STRADLEY'S LAND (BEING LAND FORMERLY OWNED BY JOHN H. JOHNSON); THENCE NORTH 100.00 RODS TO E. BALL'S LAND; THENCE 60.00 RODS TO THE PLACE OF BEGINNING, EXCEPTING THE EAST 724 FEET OF SOUTH 6.00 ACRES AS MEASURED AT RIGHT ANGLES TO AND PARALLEL WITH THE EAST LINE THEREOF. PROPERTY ADDRESS: 12010 SOUTHEAST WINSTON ROAD DAMASCUS, OR 97089 Both the beneficiary and the trustee have elected to sell the real property to satisfy the obligations secured by the trust deed and a notice of default has been recorded pursuant to Oregon Revised Statutes 86.735(3); the default for which the foreclosure is made is grantor's failure to pay when due the following

sums: monthly payments of $3,075.93 beginning 04/01/09; plus late charges of $137.22 each month beginning 04/16/09; plus prior accrued late charges of ($960.54); plus advances of $2,528.44 that represent bankruptcy fees, property inspections and paid attorney fees and costs; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; any further sums, advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable. By reason of said default the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, said sums being the following, to wit: $410,789.56 with interest thereon at the rate of 7 percent per annum beginning 03/01/09; plus late charges of $137.22 each month beginning 04/16/09 until paid; plus prior accrued late charges of ($960.54); plus advances of $2,528.44 that represent bankruptcy fees, property inspections and paid attorney fees and costs; together with title expense, costs, trustee's fees and attorneys fees incurred herein by reason of said default; any further sums advanced by the beneficiary for the protection of the above described real property and its interest therein; and prepayment penalties/premiums, if applicable. WHEREFORE, notice hereby is given that the undersigned trustee will on December 16, 2010 at the hour of 10:00 o'clock, A.M. in accord with the standard of time established by ORS

187.110, at the following place: in the courtyard located directly to the north of the main entrance of the Clackamas County Courthouse, 807 Main Street near the arbor, in the City of Oregon City, County of Clackamas, State of Oregon, sell at public auction to the highest bidder for cash the interest in the described real property which the grantor had or had power to convey at the time of the execution by grantor of the trust deed, together with any interest which the grantor or grantor's successors in interest acquired after the execution of the trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that for reinstatement or payoff quotes requested pursuant to ORS 86.757 and 86.759 must be timely communicated in a written request that complies with that statute addressed to the trustee's "Urgent Request Desk" either by personal delivery to the trustee's physical offices (call for address) or by first class, certified mail, return receipt requested, addressed to the trustee's post office box address set forth in this notice. Due to potential conflicts with federal law, persons having no record legal or equitable interest in the subject property will only receive information concerning the lender's estimated or actual bid. Lender bid information is also available at the trustee's website, www.northwesttrustee.com. Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or trust deed, and in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and trust deed, together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.753. Requests from persons named in ORS 86.753 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the beneficiary, or if required by the terms of the loan documents. In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any. NOTICE TO RESIDENTIAL TENANTS: The property in which you are living is in foreclosure. A foreclosure sale is scheduled for December 16, 2010. Unless the lender who is foreclosing on this property is paid, the foreclosure will go through and someone new will own this property. The following information applies to you only if you occupy and rent this property as a residential dwelling under a legitimate rental agreement. The information does not apply to you if you own this property or if you are not a residential tenant. If the foreclosure goes through, the business or individual who buys this property at the foreclosure sale has the right to require you to move out. The buyer must first give you an eviction notice in writing that specifies the date by which you must move out. The buyer may not give you this notice until after the foreclosure sale happens. If you do not leave before the move-out date, the buyer can have the sheriff remove you from the property after a court hearing. You will receive notice of the court hearing. FEDERAL LAW REQUIRES YOU TO BE NOTIFIED IF YOU ARE OCCUPYING AND RENTING THIS PROPERTY AS A RESIDENTIAL DWELLING UNDER A LEGITIMATE RENTAL AGREEMENT. FEDERAL LAW REQUIRES THE BUY-

ER TO GIVE YOU NOTICE IN WRITING A CERTAIN NUMBER OF DAYS BEFORE THE BUYER CAN REQUIRE YOU TO MOVE OUT. THE FEDERAL LAW THAT REQUIRES THE BUYER TO GIVE YOU THIS NOTICE IS EFFECTIVE UNTIL DECEMBER 31, 2012. Under federal law, the buyer must give you at least 90 days' notice in writing before requiring you to move out. If you are renting this property under a fixed-term lease (for example, a six-month or one-year lease), you may stay until the end of your lease term. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 90 days, even if you have a fixed-term lease with more than 90 days left. STATE LAW NOTIFICATION REQUIREMENTS IF THE FEDERAL LAW DOES NOT APPLY, STATE LAW STILL REQUIRES THE BUYER TO GIVE YOU NOTICE IN WRITING BEFORE REQUIRING YOU TO MOVE OUT. IF YOU ARE OCCUPYING AND RENTING THE PROPERTY AS A TENANT IN GOOD FAITH, EVEN IF THE FEDERAL LAW REQUIREMENT IS NO LONGER EFFECTIVE AFTER DECEMBER 31, 2012, THE REQUIREMENT UNDER STATE LAW STILL APPLIES TO YOUR SITUATION. Under state law, if you have a fixed-term lease (for example, a six-month or one-year lease), the buyer must give you at least 60 days' notice in writing before requiring you to move out. If the buyer wants to move in and use this property as the buyer's primary residence, the buyer can give you written notice and require you to move out after 30 days, even if you have a fixed-term lease with more than 30 days left. If you are renting under a month-to-month or week-to-week rental agreement, the buyer must give you at least 30 days' notice in writing before requiring you to move out. IMPORTANT: For the buyer to be required to give you notice under state law, you must prove to the business or individual who is handling the foreclosure sale that you are occupying and renting this property under a residential dwelling under a legitimate rental agreement. The name and address of the business or individual who is handling the foreclosure sale is shown on this notice under the heading 'TRUSTEE.' You must mail or deliver your proof not later than November 16, 2010 (30 days before the date first set for the foreclosure sale). Your proof must be in writing and should be a copy of your rental agreement or lease. If you do not have a written rental agreement or lease, you can provide other proof, such as receipts for rent you paid. ABOUT YOUR SECURITY DEPOSIT Under state law, you may apply your security deposit and any rent you paid in advance against the current rent you owe your landlord. To do this, you must notify your landlord in writing that you want to subtract the amount of your security deposit or prepaid rent from your rent payment. You may do this only for the rent you owe your current landlord. If you do this, you must do so before the foreclosure sale. The business or individual who buys this property at the foreclosure sale is not responsible to you for any deposit or prepaid rent you paid to your landlord. ABOUT YOUR TENANCY AFTER THE FORECLOSURE SALE The business or individual who buys this property at the foreclosure sale may be willing to allow you to stay as a tenant instead of requiring you to move out. You should contact the buyer to discuss that possibility if you would like to stay. Under state law, if the buyer accepts rent from you, signs a new residential rental agreement with you or does not notify you in writing within 30 days after the date of the foreclosure sale that you must move out, the buyer becomes your new landlord and must maintain the property. Otherwise, the buyer is not your landlord and is not responsible for maintaining the property on your behalf and you must move out by the date the buyer specifies in a notice to you. YOU SHOULD

CONTINUE TO PAY RENT TO YOUR LANDLORD UNTIL THE PROPERTY IS SOLD TO ANOTHER BUSINESS OR INDIVIDUAL OR UNTIL A COURT OR A LENDER TELLS YOU OTHERWISE. IF YOU DO NOT PAY RENT, YOU CAN BE EVICTED. AS EXPLAINED ABOVE, YOU MAY BE ABLE TO APPLY A DEPOSIT YOU MADE OR PREPAID RENT YOU PAID AGAINST YOUR CURRENT RENT OBLIGATION. BE SURE TO KEEP PROOF OF ANY PAYMENTS YOU MAKE AND ANY NOTICE YOU GIVE OR RECEIVE CONCERNING THE APPLICATION OF YOUR DEPOSIT OR YOUR PREPAID RENT. IT IS UNLAWFUL FOR ANY PERSON TO TRY TO FORCE YOU TO LEAVE YOUR HOME WITHOUT FIRST GOING TO COURT TO EVICT YOU. FOR MORE INFORMATION ABOUT YOUR RIGHTS, YOU MAY WISH TO CONSULT A LAWYER. If you believe you need legal assistance with this matter, you may contact the Oregon State Bar Association (16037 Upper Boones Ferry Road, Tigard, Oregon 97224, (503)620-0222, toll-free in Oregon (800)452-8260) and ask for lawyer referral service. If you do not have enough money to pay a lawyer and are otherwise eligible, you may be able to receive legal assistance for free. Information about whom to contact for free legal assistance; a county-by-county listing of legal aid resources may be found on the Internet at http://www.osbar.org/public/ris/lowcostlegalhelp/legalaid.html. The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com. Northwest Trustee Services, Inc. For further information, please contact: Kathy Taggart Northwest Trustee Services, Inc. P.O. Box 997 Bellevue, WA 98009-0997 586-1900 NEILSON, ANDREW.    (TS#    7023.04695) 1002.130317-FEI

EXHIBIT 7
PAGE 16

Case 3:10-cv-01516-MO   Document 15-1   Filed 01/03/11   Page 39 of 58   Page ID#: 132
From: unknown        Page: 1/7        Date: 3/17/2009 1:17:40 PM
Case 6:09-cv-06244-HO   Document 60-3   Filed 10/08/10   Page 2 of 8   Page ID#: 348



# CIRCUIT COURT OF OREGON

FIFTH JUDICIAL DISTRICT
CLACKAMAS COUNTY COURTHOUSE
807 MAIN STREET
OREGON CITY, OR 97045

503-722-2732
Fax: 503-655-8280

HENRY C. BREITHAUPT
Judge Pro Tem

March 12, 2009

Roger J Leo
Attorney at Law
520 SW Yamhill Street Ste 1025
Portland OR 97204

Kevin J Tillson
Hunt & Associates PC
101 SW Main Street Ste 805
Portland OR 97204

Teresa M Shill
Routh Crabtree Olson PC
11830 SW Kerr Parkway Ste 385
Lake Oswego OR 97035

Re: Parkin Electric, Inc. v. Saftencu, et al., No. LV08040727

Dear Counsel:

This matter is before the court on the application by Defendant Mortgage Electronic
Registration Systems (MERS) for an award of attorney fees pursuant to ORCP 68. This court
has reviewed the entire court file in this matter, the recordings of both the ORCP 21 hearing, and
the initial hearing on the motion for summary judgment.

As a preliminary matter, Plaintiff objects that this request is somehow defective because
no judgment has been entered. ORCP 68 C(5)(a) clearly contemplates that the matter of fees can
be addressed before a judgment is entered or, pursuant to ORCP 68 C(5)(b), by way of an
application and a supplemental judgment following an earlier entry of an earlier underlying
judgment. The decisions on the underlying motions of MERS were based on decisions
announced orally at the hearing on the motions. The disposition sheet in the file indicated that
"supplemental briefing may occur on atty's fees." MERS ultimately submitted a form of order
that ordered that MERS bring its motion against Plaintiff under ORS 20.105 "separately in the
form of a motion for Supplemental Judgment within the ORCP 68 timeframe." With matters
proceeding in parallel on discussion of the order on the motions for summary judgment and the
application for fees, MERS did file a Motion for Supplemental Judgment for Attorney's Fees and
Costs. Discussion among the parties and the court occurred, and the court permitted MERS to

Page 1 of 7

Parkin Electric, Inc. v. Saftencu, et al., No. LV08040727

EXHIBIT   8
PAGE   1

proceed over an objection by Plaintiff that a motion for supplemental judgment was not proper as there was, as yet, no underlying judgment. On this point Plaintiff is technically correct as no judgment has yet been entered as between MERS and Plaintiff. However this technical imperfection must be disregarded and the motion for fees must be treated as an application for fees to be included in a judgment. ORCP 12 mandates such action where, as here, there was no prejudice to Plaintiff from the error. Plaintiff had full opportunity to and did fully resist the application for fees both in briefing and at a hearing on the matter.

Next, Plaintiff objects that MERS cannot recover fees because its allegation of a right to fees under ORS 20.105 was stricken from its complaint in a proceeding before Judge Redman on a motion filed by Plaintiff under ORCP 21 E. This court is of the opinion that the action of Judge Redman in the hearing on the motion to strike was either in error or irrelevant to the ability of MERS to seek fees.

ORCP 68 C(2)(a) requires that a party seeking fees "allege the facts, statute *or* rule that provides a *basis* for the award of such fees * * * ." No attorney fees shall be awarded unless a right to recover such fees is *alleged* as provided in this subsection." (Emphasis added). The rule goes on to provide that an opposing party can move to strike an allegation, and Plaintiff here did move to strike the allegation of a right to fees under ORS 20.105 on the basis that it was a sham, frivolous, or irrelevant. Plaintiff argued at the hearing that there were no facts alleged that would give right to an award of fees. To the extent Judge Redman relied on that argument, and there was no other argument, the reliance was misplaced because the rule permits an allegation of facts *or* a statutory basis for the claim, and the statutory basis was clearly set out. *Parkhurst v. Faessler*, 62 Or App 539, 541-42, 661 P2d 571 (1983). Further, ORCP 68 C(2)(a) specifically provides that "[a]ttorney fees may be sought before the substantive right to recover such fees accrues."

To bar a party from an award of fees in a situation such as this would serve no purpose to which the rule addresses itself. As the Court of Appeals has recognized, the purpose of the requirement that a party plead the basis for a fee award is simply to put the opposing party on notice that a request for fees may be filed after the case has been decided on the merits. *Walker v. Grote*, 106 Or App 214, 217, 806 P2d 725 (1991). That purpose was fully served by the allegation in the initial answer filed by MERS and further by its reassertion of that claim for fees in its motion for summary judgment. Additionally, because, under *Dimeo v. Gesik*, 197 Or App 560, 562, 106 P3d 697 (2005) a right to fees may arise in the course of the litigation or be amplified in such course, it would be unreasonable to require a party to plead facts that might not yet have occurred. Indeed, just such a situation occurred here. Counsel for MERS attempted to dissuade Plaintiff from proceeding with its action, asserting in correspondence the arguments that, in the end, proved successful at the summary judgment stage. Nonetheless, Plaintiff persisted, but did so *without* including in its pleadings the facts or theories on which it relied at summary judgment (those being the claims that MERS was incapable of appearing in court, that it was not the real party in interest, and that the recordation of its trust deed somehow violated the Oregon recording statutes and was not entitled to the benefit of ORS 87.025(6)).

At such time as the broader outline of Plaintiff's attack was known, MERS moved for summary judgment and in connection with that motion reasserted its right to fees under

Page 2 of 7

Parkin Electric, Inc. v. Saftencu, et al., No. LV08040727

From: unknown    Page: 3/7    Date: 3/17/2009 1:17:41 PM

ORS 20.105. The court notes that, at the time that MERS raised its right to fees under ORS 20.105 by motion, the motion to strike the allegation of the right to fees under ORS 20.105 had not been ruled upon. This court can see no reason that MERS has not met the requirements of ORCP 68, especially considering that in naming MERS as a defendant in its foreclosure suit without alleging facts to support relief against a prior lienholder, Plaintiff acted in derogation of clearly established Oregon case law.

It is to that case law that the court will now turn. In *Giesy v. Aurora State Bank, et al.*, 122 Or 1, 255 P 467, *reh'g den*, 122 Or 1 (1927), the Oregon Supreme Court dealt with a property encumbered with a prior lien and a subsequent lien. The court spoke within the context of section 423 Oregon Laws, *see id.* at 6, a statute whose provisions are the predecessor of the current ORS 88.030, which provides:

"Any person having a lien subsequent to the plaintiff upon the same property or any part thereof, or who has given a promissory note or other personal obligation for the payment of the debt, or any part thereof, secured by the mortgage, or other lien which is the subject of the suit, shall be made a defendant in the suit, and any person having a prior lien *may be made defendant* at the option of the plaintiff, or by the order of the court when deemed necessary. The failure of any junior lien or interest holder who is omitted as a party defendant in the suit to redeem within five years of the date of a sheriff's sale under ORS 88.080 shall bar such junior lien or interest holder from any other action or proceeding against the property by the person on account of such person's lien or interest." (Emphasis added).[1]

In *Giesy*, the subsequent lienholder (Weiner) named the prior lienholder ("the company") and alleged only that the company claimed an interest in the property but that such interest was subordinate to the interests of Weiner. 122 Or 6-7. That is essentially what Plaintiff alleged in this case as to MERS. The court in *Giesy* stated of that allegation:

"This is a mere legal conclusion. If the company's mortgage had been paid, but was unsatisfied of record, or if it was fraudulent or invalid, and for that reason inferior to Weiner's claim, the pleader should have set forth the facts showing such to be the case. Whenever a litigant in a suit to foreclose a mortgage lien seeks to challenge the validity of a prior recorded mortgage, or the right of the mortgagee therein named to a superior lien, it is mandatory upon him to allege facts from which it would appear that the prior mortgage was invalid, or that it would be inequitable that such mortgagee's lien be made superior to his."

*Giesy*, 122 Or at 7. In this case, no such allegations were made. Plaintiff alleged only the conclusion that its lien was in parity with or superior to that of MERS even though the title records established that Plaintiff's lien was later in time. Plaintiff alleged no facts and stated no theories by which this reversal of priority would be justified. Those facts and theories were first

---

[1] While the current statute, as was true of the statute in *Giesy*, permits joinder of senior interests, that permission does not act to insulate a party from a fee award if the claim made is without foundation in fact or law.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com    EXHIBIT ___8___
PAGE ___3___

Case 3:10-cv-01516-MO   Document 15-1   Filed 01/03/11   Page 42 of 58   Page ID#: 135

From: unknown        Page: 4/7      Date: 3/17/2009 1:17:41 PM
Case 6:09-cv-06244-HO   Document 60-3   Filed 10/08/10   Page 5 of 8   Page ID#: 351

presented in Plaintiff's papers at the summary judgment stage and they involved the three claims mentioned above: that MERS was disqualified from maintaining its defense in the proceeding, that MERS was not the real party in interest, and that the MERS position was obtained in violation of the Oregon recording statutes and was, therefore, either void or without the benefit of ORS 87.025(6). In naming the senior lienholder without allegations of how Plaintiff could obtain priority and without any allegation of facts or theories supporting a claim that the MERS lien was void, Plaintiff's actions were devoid of legal or factual support.

Moreover, each of the grounds that Plaintiff ultimately stated and relied on in connection with the cross-motions for summary judgment is devoid of legal or factual support. Plaintiff first asserted that MERS could not make a claim for attorney fees or other affirmative relief because it was not registered to do business in Oregon. For this proposition Plaintiff cited ORS 60.704, a statute describing the disabilities under which a foreign corporation must live *if it is doing business in Oregon* without proper registration. However, ORS 60.701 explicitly states that maintaining or defending an action *is not doing business* such as to require registration. That statute also provides that creating or acquiring indebtedness and security for indebtedness is not transacting business. Finally, ORS 60.701 provides that securing and collecting debts and enforcing mortgages and other security interests is not doing business so as to require registration. Plaintiff asserted there is a distinction between MERS defending, which Plaintiff says is permitted without registration—and MERS seeking affirmative relief—either a declaration as to priority or attorney fees—which Plaintiff says is not permitted. That distinction finds support in ORS 60.704(5). However, the court cannot see how the remedy of a fee award under ORS 20.105 in connection with the *defense* of an action brought by Plaintiff, and without foundation in fact or law, could be viewed as affirmative relief.

Plaintiff's second position was that MERS is not the real party in interest in this matter as required by ORCP 26. There is no doubt that under the trust deed between the original lender and the borrower, MERS was both listed as the beneficiary of the trust deed and the parties to that contract agreed that MERS could and would act as, in effect, agent for the original lender and any later holder of the rights of the original lender. It is important to consider that under our trust deed statute, the "beneficiary" is "the person named or otherwise designated in a trust deed as the person for whose benefit the trust deed is given, or the person's successor in interest." ORS 86.705(1). The record also reveals that Plaintiff had notice of the role of MERS and the terms of the trust deed very early in the course of this litigation.

ORCP 26 A provides that "a party with whom or in whose name a contract has been made for the benefit of another * * * may sue in that party's own name without joining the party for whose benefit the action is brought * * * ." Under that language, MERS, as the named beneficiary under the trust deed as a nominee for others, could bring an action without being required to name such others and therefore can defend against Plaintiff. Further, if the claim of MERS for declaratory relief and attorney fees is viewed as seeking affirmative relief for such others, ORCP 26 provides that MERS is to be treated as the real party in interest as to such claims.

Plaintiff next asserted that something in the practice of MERS operating as an agent or nominee for others as to liens is such a violation of the spirit and letter of Oregon recording law

Page 4 of 7

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

EXHIBIT  8
PAGE  4

that the actions of MERS cause any lien naming it as agent to be void or not subject to the beneficial provisions of ORS 87.025(6). Plaintiff cites no statute or case that provides direct support for such a proposition. The only support provided was stated to be in ORS 93.640 and ORS 93.643. ORS 93.640 and ORS 93.643 do not provide that the practices of lenders and MERS as their agent are invalid. Those statutes only provide that unrecorded interests are not entitled to the benefit of constructive notice. The simple answer to this argument is that the interest of MERS, and those for whom it was nominee, in question here was recorded and known to Plaintiff when it received the litigation guarantee document prior to starting this action.

The statutes do not prohibit liens to be recorded in the deed records of counties under an agreement where an agent will appear as lienholder for the benefit of the initial lender and subsequent assignees of that lender—even where the assignments of the beneficial interest in the record lien are not recorded. It is clear that such unrecorded assignments of rights are permissible under Oregon's trust deed statute because ORS 86.735 provides that if foreclosure by sale is pursued, all prior unrecorded assignments must be filed in connection with the foreclosure. The trust deed statutes therefore clearly contemplate that assignments of the beneficial interests in obligations and security rights will occur and may, in fact, not have been recorded prior to foreclosure. The legislature was clearly aware that such assignments occurred and nowhere provided that assignments needed to be recorded to maintain rights under the lien statutes except where foreclosure by sale was pursued.

Ultimately, MERS sought the protection of the lien statutes in ORS chapter 87. Those provisions do not provide rights, obligations or status in respect of "lenders," as Plaintiff repeatedly sought to establish. Those statutes look only to notices to and the states of "mortgagees" and only the beneficiary of a trust deed is treated as a mortgagee under ORS 87.005(6). The statutes do not prevent agency arrangements as agreed upon among borrowers, lenders, trustees and beneficiaries. In this case, very early on Plaintiff received a title report document that, in fact, showed that the property that it sought to lien had two prior trust deeds filed against it. One was the lien in question here, as to which MERS was shown as "beneficiary" and contact information to MERS was provided. The other was a later line of credit trust deed as to which Bank of America was listed as "beneficiary." Plaintiff proceeded to name in its complaint Bank of America—a "beneficiary"—but did not initially name MERS, the other listed "beneficiary." Instead, Plaintiff named the original lender who initially was the principal for MERS as agent or nominee and did not name MERS.

Plaintiff may also have failed to provide certain notices to MERS that impaired its rights to collect attorney fees in its foreclosure action. This action, for which Plaintiff has only itself to blame—MERS was, after all, shown as the beneficiary on the litigation guarantee—cannot affect the rights of MERS. The notice provisions in the lien statutes do not direct notices be given to lenders but rather direct that they be given to "mortgagees." Moreover, as will be next discussed, no amount of notice to MERS or any person for whom it acted would have allowed Plaintiff to obtain a position superior to that of MERS or such other persons. They had the protection of Oregon's priority statutes and were not subject to an exception under ORS 87.025(6).

---

Parkin Electric, Inc. v. Saftencu, et al., No. LV08040727

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

EXHIBIT  8
PAGE     5

Case 3:10-cv-01516-MO   Document 15-1   Filed 01/03/11   Page 44 of 58   Page ID#: 137

From: unknown        Page: 6/7       Date: 3/17/2009 1:17:42 PM
Case 6:09-cv-06244-HO   Document 60-3   Filed 10/08/10   Page 7 of 8   Page ID#: 353

From the moment MERS became a target of Plaintiff's efforts, its counsel asserted that MERS had priority over Plaintiff's construction lien by reason of the provisions of ORS 87.025(6). At the hearing on the summary judgment motions in this matter, Plaintiff attempted to establish that its lien was superior to that of MERS because its lien had the benefit of ORS 87.025(2). In its argument, Plaintiff completely ignored the opening clause of that statute which provides that its rules do not apply in the case that ORS 87.025(6) applies.[2]

When Plaintiff finally addressed ORS 87.025(6), it asserted that MERS had the burden of proof with respect to the factual predicate stated in the statute that could give a lien, like Plaintiff's, created under ORS 87.010, priority as to certain alterations or repairs. That predicate is that the deed of trust over which priority is sought must have been given to finance the alteration or repair. *If that predicate is not satisfied*, the statute provides that Plaintiff's lien "shall not take precedence over the mortgage or trust deed." Thus, for a lien claimant to get the benefit of the exception in ORS 87.025(6), the lien claimant must be involved in an alteration or repair and the trust deed involved must have been given to finance the alteration or repair. The court is of the opinion, and so ruled at hearing on this matter, that on such questions the plaintiff would have the burden of proof as it would be the party taking any benefit from positive findings on such factual questions. Plaintiff contested this conclusion but admitted that it did not have evidence in the record that the contract was a contract for alteration or repair. Plaintiff does not appear to have ever asserted that the trust deed in question was given to finance any repair or alteration. Interestingly, the record appears to fully support, and permit no factual conclusions other than, that Plaintiff's contract was for alteration or repair. Indeed, *Plaintiff* alleged that its contract was for "remodeling." The record also establishes without doubt that the trust deed in question was given long before Plaintiff ever visited the property and was not given to finance the "remodeling" that Plaintiff undertook.

Plaintiff's arguments as to the operation of ORS 87.025(6) were devoid of legal or factual support. Plaintiff could avoid the clearly adverse effect of that statute only if it somehow established that MERS was not the beneficiary of a trust deed or that MERS was somehow disabled from making an assertion that it was the beneficiary of a trust deed. For this purpose it made the arguments on corporate qualification to do business, real party in interest and violation of the recording statutes that were discussed above and found to be devoid of basis in fact or law.

Plaintiff chose to go on a crusade in this case against the contractual practices that lenders, borrowers, and MERS have chosen to use. Those practices are not proscribed by law. Although Plaintiff at the hearing on summary judgment in this matter admitted that it was not authorized to act as a private attorney general as to the question of the validity of the MERS system, this is exactly what it has chosen to do—arguing numerous public policy and revenue interests that it asserts are violated by the MERS system. Whatever its motivations were, MERS should not have to bear the economic consequence of defending against this crusade.

Plaintiff did not request an evidentiary hearing on the question of reasonableness of the fee request. It did object to the amount although it did not object to the hourly rate on which the

---

[2] Plaintiff appeared to also argue that it could claim the benefit of ORS 87.025(3) because MERS had not shown the work was not original construction. However, Plaintiff had actually alleged that the work was for "remodeling" and was estopped from asserting otherwise.

<u>Parkin Electric, Inc. v. Saftencu, et al.</u>, No. LV08040727                                              Page 6 of 7

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com.

EXHIBIT ___8___
PAGE ___6___

request is based. Plaintiff asserted that the time invested by counsel for MERS in this matter was excessive and not reasonably calculated to protect the interests of MERS. Plaintiff asserts that the fees were charged due to a "contest of wills" that was unnecessary because counsel for Plaintiff offered reasonable alternatives to litigation. The court concludes that, if there was a contest of wills, Plaintiff's counsel initiated the contest. This court has considered ORS 20.075 and finds the amount of the fee and cost request to be reasonable for the following reasons:

(1) MERS early on sought to obtain the result it obtained in this matter, and for the reasons it ultimately prevailed. Plaintiff rebuffed all such attempts to resolve the matter;

(2) The court is not aware of any reason why MERS was obliged to accept alternatives suggested by Plaintiff in order to escape from litigation brought against it by Plaintiff. Plaintiff brought no evidence to the court, other than the assertions of its own counsel that it would be viewed as unreasonable for MERS to resist the crusade on which Plaintiff embarked;

(3) Plaintiff served discovery requests on MERS to which responses were demanded, but which had little or nothing to do with the claims ultimately made by Plaintiff against MERS. Those requests required attention by counsel to MERS;

(4) Notwithstanding clear Oregon case law to the contrary, Plaintiff did not plead facts or theories that would support its position that its asserted lien would be superior to that of MERS;

(5) The claims and positions of Plaintiff were in no way reasonable. The ultimate claim of Plaintiff, never contained in its pleadings, was in substance, for a declaration that the MERS system is invalid. That substantive position was, however, asserted in the guise of numerous other arguments that required attention and work to dispute and which were without basis in fact or law; and

(6) An award in this instance will not deter good faith claims in other cases and this award will, hopefully, deter litigation behavior of the type undertaken by Plaintiff.

The application for fees and costs is granted. Counsel for MERS is directed to prepare a form of judgment based on this decision and the earlier order entered in this matter.

Very Truly Yours,

*/s// Henry Breithaupt*

Henry C. Breithaupt
Judge

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

EXHIBIT    8
PAGE       7

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE STATE

OF IDAHO IN AND FOR THE COUNTY OF KOOTENAI

| | |
|---|---|
| VERMONT TROTTER, | ) |
| | ) CASE NO. CV-10-95 |
| Plaintiff, | ) |
| | ) MEMORANDUM DECISION, FINDINGS |
| vs. | ) OF FACT AND CONCLUSIONS OF LAW |
| | ) AND ORDER RE: DEFENDANTS' |
| BANK OF NEW YORK MELLON F/K/A | ) MOTION TO DISMISS AND PLAINTIFF'S |
| BANK OF NEW YORK AS TRUSTEE FOR | ) MOTION TO COMPEL |
| THE CERTIFICATE HOLDERS OF | ) |
| CWALT, INC. ALTERNATIVE LOAN | ) |
| TRUST 2005-28CB MORTGAGE PASS- | ) |
| THROUGH CERTIFICATES SERIES 2005- | ) |
| 28CB; MORTGAGE ELECTRONI | ) |
| REGISTRATION SYSTEMS, INC.; and | ) |
| RECONTRUST COMPANY, N.A. | ) |
| | ) |
| Defendants. | ) |

Monica Flood Brennan, MONICA FLOOD BRENNAN, P.C., for Plaintiff

Jeff Barnes, W.J. BARNES, P.A., for Plaintiff (admitted *pro hac vice*)

Lance E. Olsen, ROUTH CRABTREE OLSEN, P.S., for Defendants

### I. Factual and Procedural History

On or about June 17, 2005, Plaintiff Vermont Trotter ("Trotter") executed a Note

and Deed of Trust in favor of Mortgage Electronic Registration Systems, Inc. ("MERS")

as nominee for Lender Countrywide Home Loans, Inc. ("Countrywide"), its assigns and

MEMORANDUM DECISION AND ORDER    EXHIBIT___9___    Page 1 of 13
PAGE____1____

successors. *Complaint at p. 3, ¶¶ 7 and 8*. The Deed of Trust was recorded June 24,

2005, as Instrument No. 1959776 in the Kootenai County Recorder's Office.

*Defendants' Memorandum of Law in Support of Motion to Dismiss, Ex A, the Deed of

Trust.* [1] The Deed of Trust encumbers a piece of real property located in Kootenai

County, Idaho, commonly known as 512 South 14th Street, Cocur D'Alene, Idaho, 83814

(the "Property") and legally described as Lot 13 in Block 11 of Lakeshore Addition to

Coeur d'Alene, according to the official plat thereof, filed in Book B of Plats at page(s)

121[2], official records of Kootenai County, Idaho. This property is Trotter's primary

residence. *Complaint at p. 3. ¶ 5.*

     Plaintiff's Complaint states that thereafter Countrywide transferred the servicing

rights on the loan to BAC Home Loans Servicing, LP, a subsidiary of Bank of America,

N.A. *Complaint at p. 4, ¶ 9*[3]. Defendants argue that servicing has remained with the

same entity as BAC Home Loans is the entity formerly known as Countrywide Home

Loans. Inc. and that the name change was a result of Bank of America's acquisition of

Countrywide. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p. 3

and Ex. B, Countrywide Home Loans, Inc Company Profile.*

     On or about August 18, 2009, MERS executed a Corporation Assignment of Deed

of Trust, and recorded the same as Instrument No. 2228916000 in the Kootenai County

Recorder's Office on August 24, 2009, the effect of which was to name as the new

beneficiary The Bank of New York Mellon f/k/a The Bank of New York ("Bank of New

York") as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust

2005-28CB Mortgage Pass-through Certificates Series 2005-28CB. *Defendants'*

---

[1] Defendants have not provided page numbers nor labeled their exhibits, as such this Court has had to do so
for form and function purposes of this Decision.
[2] Trotter's Complaint provides page 128, but the Deed of Trust and all other recordings provide page 121.
[3] There are two ¶ 9s in the Complaint, this is the first ¶ 9.

MEMORANDUM DECISION AND ORDER   EXHIBIT ___9___   Page 2 of 13
                                               PAGE ___2___

*Memorandum of Law in Support of Motion to Dismiss at p. 3 and Ex. C, Corporation Assignment of Deed of Trust.*

On August 24, 2009, The Bank of New York executed and caused to be recorded on August 24, 2009, in Kootenai County Recorder's Office, an Appointment of Successor Trustee under Instrument No. 2228917000, pursuant to I.C. § 45-1504, naming Recontrust Company, N.A. ("Recontrust") the successor trustee under the Deed of Trust. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p.3 and Ex. D, Appointment of Successor Trustee, Complaint at p.4 ¶ 10 and Ex. B.*

Also on August 24, 2009, Recontrust recorded in Kootenai County Recorder's Office, a Notice of Default[4] as Instrument No. 2228918000, and mailed Trotter the same. The Notice of Default identifies The Bank of New York as beneficiary under the Deed of Trust. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p.4 and Ex. E, Notice of Default, Complaint at p.4 ¶9[5] and Ex. A.*

On September 2, 2009, Recontrust executed and mailed Trotter the Notice of Trustee's Sale that set a foreclosure sale for January 11, 2010. *Defendants' Memorandum of Law in Support of Motion to Dismiss at p.4 and Ex. F, Notice of Trustee's Sale, Complaint at p.4 ¶ 11 and Ex. C.*

On January 6, 2010, Trotter filed his Complaint for Declaratory and Injunctive Relief and to Cancel Trustee's Sale Scheduled for January 11, 2010, wherein he alleges that he has never been provided with any Assignment demonstrating that the Deed of

---

[4] The Notice of Default provides that the default is "[f]ailure to pay the monthly payments due 05/01/2009 of principal, interest and impounds and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said Deed of Trust, and any supplemental modifications thereto. As of 08/18/2009 this amount is $5,762.88, together with any unpaid and/or accruing real property taxes, and/or assessments, attorney fees, Trustees' fees and costs, and any other amount advanced to protect the security of said Deed of Trust."
[5] This is the second ¶ 9 of the Complaint.

MEMORANDUM DECISION AND ORDER    EXHIBIT __9__    Page 3 of 13
                                PAGE __3__

Trust was transferred by Countrywide to anyone else including Bank of New York. He

also alleges that he has no information that informs him of the current owner of the Note.

Additionally, Trotter alleges that the securitized loan trust, into which his loan was

placed, may have been taken over by borrower default insurance. Consequently, Trotter

argues there may not be any default giving rise to a foreclosure action and sale, as his

loan obligation may have been liquidated in whole or in part. As such, Trotter argues that

the Defendants do not have standing to foreclose or the proper legal or equitable interest

in either the Note or Deed of Trust to institute a foreclosure action. *Complaint at pp. 4-6.*

On January 8, 2010, this Court filed its Temporary Restraining Order Cancelling

the Trustee's Sale Scheduled for January 11, 2010, finding that "Plaintiff may lose his

residence wrongfully without issuance of this temporary restraining order, and that said

injury may be irreparable through the scheduled foreclosure sale." *Order at p. 3.* On

February 5, 2010, this Court entered another Temporary Restraining Order restraining the

sale of the property on February 8, 2010.

On February 8, 2010, Defendants filed their Answer, and on April 12, 2010,

Defendants filed their Motion to Dismiss for Failure to State a Claim upon which Relief

can be Granted, pursuant to IRCP 12(b)(6), and a Memorandum of Law in Support of

Motion to Dismiss.

On May 12, 2010, Plaintiff filed his Memorandum of Law in Opposition to

Defendants' Motion to Dismiss, along with a Motion to Compel seeking this Court to

issue an order compelling the Defendants to fully and completely answer Interrogatories

and respond to the Request for Production of Documents dated February 16, 2010. On

May 18, 2010, Defendants filed their Response to Plaintiff's Motion to Compel

MEMORANDUM DECISION AND ORDER    EXHIBIT __9__    Page 4 of 13
                                  PAGE____4____

Production of Documents and their Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss.

Oral argument was heard on May 26, 2010, and this Court took the matter under advisement. This Memorandum Decision shall constitute this Court's findings of fact and conclusions of law, pursuant to I.R.C.P. 52(a). Any of the following findings of fact that should be denominated as a conclusion of law shall be deemed to be a conclusion of law. Any of the following conclusions of law that should be denominated a finding of fact shall be deemed a conclusion of law.

## II. Defendants' Motion to Dismiss

Defendants Bank of New York, MERS, and Recontrust request this Court to dismiss Plaintiff's Complaint pursuant to IRCP 12(b)(6). Defendants also request that this Court take judicial notice of the various public recordings that are attached to their Memorandum of Law in Support of Motion to Dismiss pursuant to I.R.E. 201.

### A.   Standards

The standard for reviewing a dismissal for failure to state a cause of action pursuant to I.R.C.P. 12(b)(6), is the same as the standard upon the grant of a motion for summary judgment, if the court considers evidence outside the pleadings in ruling on the motion. I.R.C.P. 12(b); *Idaho Sch. For Equal Educ. Opportunity v. Evans,* 123 Idaho 573, 850 P.2d 724 (1993); *Gardner v. Hollifield,* 97 Idaho 607, 609, 549 P.2d 266, 268 (1976); *Green v. Gough,* 96 Idaho 927, 928, 539 P.2d 280, 281 (1975). In determining whether a complaint adequately states a cause of action, every reasonable intendment will be made to sustain it. *Curtis v. Siebrand Bros. Circus & Carnival Co.,* 68 Idaho 285, 194 P.2d 281 (1948) (citations omitted). A motion under this section admits the truth of the facts alleged, and all intendments and inferences that reasonably may be drawn

MEMORANDUM DECISION AND ORDER   EXHIBIT  9   Page 5 of 13
                                 PAGE    5

therefrom, and such will be considered in light most favorable to the plaintiff. *Walenta v.*
*Mark Means Co.*, 87 Idaho 543, 394 P.2d 329 (1964). A motion to dismiss for failure to
state a claim should be granted where it appears beyond doubt that the Plaintiff can prove
no set of facts in support of his claim that would entitle him to relief. *Gardner v.*
*Hollifield, supra.* The issue is not whether the plaintiff will ultimately prevail, but
whether the party is entitled to offer evidence to support the claims. *Sumpter v. Holland*
*Realty, Inc.*, 140 Idaho 349, 351 93 P.3d 680, 682 (2004)(citation omitted).

A motion for summary judgment shall be rendered forthwith if the pleadings,
depositions, and admissions on file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law. I.R.C.P. 56(c); *Loomis v. City of Hailey*, 119 Idaho 434,
436, 807 P.2d 1272 (1991). Once the moving party has properly supported the motion
for summary judgment, the non-moving party must come forward with evidence by way
of affidavit or otherwise which contradicts the evidence submitted by the moving party
and which establishes the existence of a material issue of disputed fact. *Zehm v*
*Associated Logging Contractors, Inc.*, 116 Idaho 349, 350, 775 P.2d 1191 (1988). The
purpose of summary judgment proceedings is to eliminate the necessity of trial where
facts are not in dispute and where existent and undisputed facts lead to a conclusion of
law which is certain. *Berg v. Fairman*, 107 Idaho 441, 444, 690 P.2d 896 (1984).

If the court will be the ultimate trier of fact and if there are no disputed
evidentiary facts, the judge is not constrained to draw inferences in favor of the party
opposing the motion for summary judgment; rather, the trial judge is free to arrive at the
most probable inferences to be drawn from uncontroverted evidentiary facts, despite the
possibility of conflicting inferences, because the court alone is responsible for resolving

MEMORANDUM DECISION AND ORDER   EXHIBIT___9___
                                PAGE____6___        Page 6 of 13

conflicts between those inferences. *Loomis,* 119 Idaho at 437, 807 P.2d 1272 (1991);

*Stafford v. Weaver,* 136 Idaho 223, 225, 31 P.3d 245 (2001) (citation omitted).

**B.    Discussion**

    **1. Judicial Notice**

        A court's decision to take judicial notice of an adjudicative fact is a determination

that is evidentiary in nature and is governed by the Idaho Rules of Evidence. *Newman v.*

*State,* --- P.3d ---, 2010 WL 323545 (Ct. App., January 29, 2010). I.R.E. 201(b) provides

that "a judicially noticed fact must be one not subject to reasonable dispute in that it is

either (1) generally known within the territorial jurisdiction of the trial court or (2)

capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." A court must take judicial notice if requested by a party and

supplied with the necessary information. *Id.,* I.R.E. 201(d).

        The exhibits that Defendants have attached to their Memorandum of Law in

Support of Motion to Dismiss, as Exhibits A-F (described above), are not subject to

reasonable dispute. In fact, Trotter has not disputed their authenticity providing the Court

with three of the same records. Further, the Defendants have requested that this Court

take judicial notice of the exhibits in writing and this Court does so pursuant to I.R.E.

201(d)

    **2. Defendants have standing to maintain a foreclosure of the Property.**

        Trotter argues in his Complaint and Memorandum of Law in Opposition to

Defendants' Motion to Dismiss that Bank of New York is not the beneficiary of the Deed

of Trust and Recontrust is not the successor trustee and has no standing to bring forth a

foreclosure action as against the Property, as MERS was never the beneficiary but merely

the nominee.

Trotter provides that "Idaho courts have spoken extensively on the alleged authority of MERS to do anything, and have uniformly, along with other jurisdictions, rejected the authority of MERS to undertake any action to institute or further a foreclosure including any purported assignment of either the Note or the Deed of Trust from the original lender to any third party, which would include Defendant Bank of New York herein." *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at pp. 3-4  ¶6.*

Trotter cites this Court to only two Idaho cases; both are cases from the United States Bankruptcy Court for the District of Idaho and are *ne constringo* on this Court.

Defendants argue that MERS was the beneficiary as defined in I.C. § 45-1502 and had the authority to assign its rights to Bank of New York, who then had the right to appoint a successor trustee, Recontrust. Further, Recontrust was vested with the powers of the original trustee, to include the power of sale upon default.

The Idaho Deed of Trust Act, I.C. § 45-1502 et seq. (the "Act"), sets out the guidelines and procedures for carrying out a non-judicial foreclosure proceeding. Beneficiary is defined in I.C. § 45-1502 as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest, and who shall not be the trustee." Further, in that statute, Trustee is defined as "a person to whom the legal title to real property is conveyed by trust deed, or his successor in interest."

I.C. § 45-1504(2) provides that:

> The trustee may resign at its own election or be replaced by the beneficiary. The trustee shall give prompt written notice of its resignation to the beneficiary. The resignation of the trustee shall become effective upon the recording of the notice of resignation in each county in which the deed of

trust is recorded. If a trustee is not appointed in the deed of trust, or upon the resignation, incapacity, disability, absence, or death of the trustee, or the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. Upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.

This Court finds the following: that MERS was the beneficiary under the Deed of Trust, recorded as Instrument No. 1959776. The Deed of Trust provides **"MERS is the beneficiary under this Security Instrument."** *See Defendants' Memorandum of Law in Support of Motion to Dismiss, Exhibit A, at p. 1(emphasis in original)*   Further, Bank of New York is the beneficiary pursuant to the recorded Assignment of Deed of Trust, recorded on August 24, 2009, as Instrument No. 222891600, in which MERS assigned its rights as beneficiary to Bank of New York, pursuant to I.C. § 45-1502(1). Also, as the Beneficiary, Bank of New York was entitled to appoint the successor trustee, in this case Recontrust. Pursuant to I.C. § 45-1504(2), upon recording the Appointment of Successor Trustee in the mortgage records of the county in which the trust deed is recorded, the successor trustee shall be vested with all of the powers of the original trustee. The Appointment of Successor Trustee was recorded in Kootenai County, wherein the Deed of Trust is recorded, on August 24, 2009, as Instrument No. 2228917000. Therefore, as a matter of law, this Court finds that Recontrust was vested with the powers of the original trustee, which includes the power of sale.

Trotter also argues that because the loan was securitized that there may be no default that would give rise to a foreclosure action or sale, and that his loan obligation may have been liquidated. Further, Trotter argues that Defendants have failed to address the matters of credit enhancements, insurances and applicable setoffs to the claimed

EXHIBIT ___9___
                                       PAGE ___9___

amount due as set forth in paragraphs 15 and 16 of the Complaint; thus, there are issues of material fact concerning whether Bank of New York paid 100, 200 or more percent on the loan. This Court finds that Trotter has not cited this Court to any case, statute, contract, or other authority to support the preceding allegations and therefore has not stated a valid cause of action.

Lastly, this Court finds that the Note and Deed of Trust may be sold one or more times without prior notice to the Borrower. Further, the Deed of Trust provides that if the borrower breaches any covenant or agreement contained in the Security Instrument, the Property may be sold. *See Defendants' Memorandum of Law in Support of Motion to Dismiss, Exhibit A at ¶¶20 and 22*

Alternatively, this Court also dismisses Plaintiff's Complaint on the grounds that he has not made any cognizable legal claims. Noticeably absent from Trotter's Complaint is any argument that he is not in default, that he has made a payment and was not credited, that the amount owed is inaccurate or any other cognizable legal claim. Plaintiff has provided this Court with no controlling case law, statute or rule to support his alleged complaints.

### 3. **Idaho's Deed of Trust Act, I.C. § 45-1502, et seq.**

Defendants allege that they have complied with the statutory requirements in carrying out the non-judicial foreclosure. Specifically, Defendants allege that they have complied with I.C. §§ 45-1505(1)-(3) and 45-1506.

Trotter does not argue against this allegation, except to state, "whether Defendants allegedly 'complied with' the Idaho foreclosure procedure is irrelevant to the inquiry and issues raised by the Complaint. *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at p. 14, ¶ 34.*

MEMORANDUM DECISION AND ORDER    EXHIBIT ___9___ Page 10 of 13
PAGE ___10___

In brief, the Act provides that prior to seeking foreclosure, three conditions must be met: (1) the trust deed, all assignments, and the appointment of successor trustee must be recorded in the mortgage records of the county where the property is located; (2) there must be default; and, (3) the trustee or beneficiary must record a notice of default. See I.C. § 45-1505(1)-(3). The Act also provides that following recordation of the Notice of Default, the trustee shall give notice of the trustee's sale by registered or certified mail. See I.C. § 45-1506(2).

The Notice of Trustee's Sale shall set forth: (a) the names of the grantor, trustee and beneficiary in the trust deed; (b) a description of the property covered by the trust deed; (c) the book and page of the mortgage records or the recorder's instrument number where the trust deed is recorded; (d) the default for which the foreclosure is made; (e) the sum owing on the obligation secured by the trust deed; and, (f) the date, time and place of the sale. See I.C. § 45-1506(4)(a)-(f). There is evidence in this record that shows that Defendants have met the requirements of I.C. § 45-1505(1)-(3), 45-1506(2) and 45-1506(4)(a)-(f). Again, Trotter has not opposed, essentially conceding to, Defendants' argument that they have complied with the Act.

### III.  Plaintiff's Motion to Compel

Plaintiff's Motion to Compel is denied, as it is now moot due to the granting of Defendants' Motion to Dismiss.

### IV.  Conclusion and Order

Therefore, it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief, and there exist no triable issues of material fact that preclude this Court from granting dismissal. As such, the stays that

were in effect for the January 11th and February 8th, 2010, foreclosure sales are hereby lifted and Defendants' Motion to Dismiss is granted.

It appears to the Court that good cause for the entry of this Order has been shown; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED that:

Plaintiff's Complaint fails to state a claim upon which relief can be granted as to all causes of action asserted, and there are no genuine issues of material fact existing. For these reasons, this case is dismissed with prejudice. Plaintiff's Motion to Compel is denied, as it is now moot.

IT IS FURTHER ORDERED that the previously entered stays of foreclosure sales (Temporary Restraining Orders) are hereby lifted and vacated.

IT IS FURTHER ORDERED that Defendants will prepare and submit to this Court a judgment consistent with this Memorandum Decision and Order.

DATED this 2 day of July, 2010.

Lansing L. Haynes
LANSING HAYNES, District Judge

## CERTIFICATE OF MAILING

I hereby certify that on the __2__ day of July, 2010 a true and correct copy of the foregoing was mailed, postage prepaid, or sent by interoffice mail to:

Monica Flood Brennan
MONICA FLOOD BRENNAN, P.C.
608 Northwest Blvd., STE. 101
Coeur d'Alene, ID 83814
Facsimile: 208-676-8288

Lance E. Olsen
ROUTH CRABTREE OLSEN, P.S.
3535 Factoria Blvd SE, STE 200
Bellevue, WA 98006
Facsimile: 425-283-5905

Jeff Barnes
W.J. Barnes, P.A.
c/o International Mediation Associates, Inc.
6655 West Sahara Ave., Ste. B200
Las Vegas, Nevada 89146
No fax provided

Daniel English
Clerk of the District Court

By _Lui Sverdlo_
Deputy Clerk